William Herman IVES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 580S118.

Supreme Court of Indiana.

March 30, 1981.

Rehearing Denied June 4, 1981.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after trial by jury of Rape, Ind.Code § 35–42–4–1 (Burns 1979), and of being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns 1979). He was sentenced to ten (10) years imprisonment on the Rape charge and to an additional thirty (30) years imprisonment as an Habitual Criminal, for a total of forty (40) years. This direct appeal presents the following issues:

(1) Whether the evidence was sufficient to support the rape conviction.

(2) Whether errors occurred concerning the defendant's rights relative to the discovery had and evidence admitted on the habitual offender charge.

(3) Whether the trial court erred with respect to jury instructions given and refused.

(4) Whether the trial court erred in admitting the victim's pants into evidence over the defendant's objection that the chain of custody had not been adequately established.

(5) Whether the trial court erred in allowing the alternate juror to sit in the jury room during deliberations.

\*    \*    \*    \*    \*    \*

ISSUE I

The defendant contends that the rape conviction is improper for want of evidence of a forcible penetration. *Dobrzykowski v. State* (1978) 269 Ind. 604, 382 N.E.2d 170.

The prosecutrix and two of her friends drove to Indianapolis to attend the Indy 500 time trials. One of her friends had arranged for the girls to stay at the home of her future employer and had also arranged to meet one, Douglas White, and his friends, who would show the girls around the city. The girls met White and two of his friends, including the defendant, at the Holiday Inn on Shadeland Avenue as prearranged. The group of six persons spent the night partying and dancing and then went to a restaurant at about 2:00 a. m. for breakfast.

After leaving the restaurant, the prosecutrix rode in the defendant's automobile, with the understanding that he would take her back to the Holiday Inn to pick up her own, after which they would go to the house where the girls planned to stay. They followed White's car until it turned, after which he proceeded independently, stating that he had to stop for gasoline but a few minutes later stating that he was going directly to the house where the girls planned to stay.

They drove around for fifteen to twenty minutes, and she suggested that they stop to make a telephone call to get directions, but the defendant parked the vehicle off the road near Eagle Creek Park and pulled her toward him and kissed her. She neither encouraged nor resisted, but told him that they should find a telephone booth, make a call, and leave.

The defendant suggested that she relax. He continued to kiss her and she pulled away. She said that she thought that they should leave to find the others, but he told her to relax, that he wasn't going to do anything.

The defendant then attempted to remove her pants. She told him to stop and that she was menstruating, whereupon he grabbed her waist and pulled her down. The victim's testimony continues:

"Q. And then what happened?

"A. And then I was trying to get his hands away from me, and he reached around behind me and grabbed a hold of my right hand so that my left arm was pinned underneath me and my—he had a hold of my right hand, and he continued to try to get my pants undone."

This struggle continued until the defendant completed the rape. During the struggle the prosecutrix cried and screamed and tried to pull her pants back up as the defendant was trying to pull them down.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the evidence of each element of the crime charged may be found therefrom beyond a reasonable doubt, the verdict will not be disturbed. (Citation omitted). In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State* (1980) Ind., 398 N.E.2d 1260, 1264.

■ The uncorroborated testimony of the victim is sufficient to sustain a rape conviction. *Geisleman v. State* (1980) Ind., 410 N.E.2d 1293, 1295. As related above, the record shows that the defendant used force to accomplish the penetration of the victim.

### ISSUE II

Defendant assigns an assortment of alleged errors related to the habitual offender determination phase of the bifurcated trial, the totality of which, he contends, denied him representation by competent, informed counsel and the right to confront his accusers.

The rape information was filed on June 12, 1979. On June 21st, Defendant was arraigned, proper counsel was appointed and discovery ordered completed within thirty days.

On September 11th, Defendant filed a speedy trial motion, and a trial date of October 17th was set. We are not apprised as to why the trial did not commence on that date, but on October 31st, an amended information adding the habitual offender count was filed.

On November 5th, the defendant was again arraigned, the case was set for trial for November 12th; and both sides were ordered to comply with discovery orders within thirty days.

On November 9th, the State, pursuant to discovery orders, supplied the defendant with documents to be offered into evidence supporting the rape charge and others supporting the habitual offender charge. Defendant filed a motion in limine, seeking to preclude introduction of the documents, which motion was subsequently sustained as to the evidence of rape but overruled as to the evidence of the habitual offender status; and the latter was subsequently admitted into evidence, over defendant's timely objection.

The case was called to trial and the jury impaneled and sworn. The defendant then moved orally for a continuance, which was refused.

■ There is no merit to Defendant's claim that he was harmed by the State's tardy compliance with the original discovery order. The evidence that was tardily disclosed was excluded.

■ Neither is there merit to the claim that the documentation of his habitual offender status came late. It was furnished nine days following the amendment which added his offender status as an issue, four days following the order and three days prior to the commencement of the trial. The evidence merely related to his identity; and there is no indication that the defendant was surprised by the disclosure. Neither is there any showing of how he would have benefited from an earlier disclosure or by the grant of a continuance. There has been no claim that the records introduced did not relate to him.

■ The later amendment and election by the State to try the defendant as an habitual offender may well have entitled the defendant to reassess his prior determination to seek an early trial. Abstractly, such a late change could well be valid grounds for a continuance, in which case it would behoove a defendant to act promptly. In the case before us, the defendant did not ask for a continuance when he first became aware of the amended charges but awaited the actual commencement of the trial. He revealed neither a need for the continuance nor a justification for the delay in seeking it, and it was properly denied. *Hardin v. State* (1981) Ind., 414 N.E.2d 570; *White v. State* (1975) 263 Ind. 302, 305, 330 N.E.2d 84, 86.

Defendant has alluded to having been placed in a position of electing between foregoing his speedy trial rights and proceeding to trial uninformed, but we do not see that he was uninformed in any significant manner.

We do not understand the defendant's claim that the court did not enforce its discovery orders. Evidence relative to the habitual offender status was not relevant until the amended information was filed. According to his brief, the only other evidence that was supplied to the defendant belatedly was excluded.

## ISSUE III

The defendant raises three errors relating to the trial court's instructions to the jury.

The Record shows that the defendant, without stating his grounds therefor, objected to Instructions Nos. 16 and 17:

## INSTRUCTION NO. 16

"You are instructed that any sexual penetration, however slight, is sufficient to complete the crime of rape, if the other elements are proved. Proof of emission is not necessary."

## INSTRUCTION NO. 17

"It is not the law of this State that a woman assaulted with an intent to commit rape upon her is required to resist by all violent means within her power. The law requires only that the case be one in which the woman did not consent. Her resistance must not be mere pretense but in good faith. The law does not require that the woman shall do more than her age, strength, and all attendant circumstances make it reasonable for her to do in order to manifest her opposition. The question of resistance is a question of fact for you to determine and find and not a question this court can decide."

The defendant's brief does not set out the verbatim objection to these instructions. "Ind.R.Ap.P. 8.3 requires an appellant predicating error upon the giving of an instruction, to set out in the argument section of his brief the verbatim objection made thereto, as well as the verbatim instruction. Defendant has failed to comply with this rule, and the error, if any, is deemed waived. Notwithstanding Ind.R.Ap.P. 8.3, we have searched the record and find that it discloses a mere naked objection to the giving of such instruction without stating the grounds therefor. Ind.R.Tr.P. 51(c) provides: 'No party may claim as error the giving of an instruction unless he objects thereto * *, *stating distinctly the matter to which he objects and the grounds of his objection.*'"

*Brandon v. State* (1978) 268 Ind. 150, 154, 374 N.E.2d 504, 506–07. (Emphasis in original).

■ Nevertheless we proceed to the defendant's contentions. He asserts that Instruction No. 16 should have stated " * * * if the other elements are proved *beyond a reasonable doubt.*" We found a similar contention without merit in *Lottie v. State* (1980) Ind., 406 N.E.2d 632, 636, and note that here, as in *Lottie*, the jury was fully instructed on the State's burden of proof. Additionally, this Court has repeatedly approved Instruction No. 17. *Lottie v. State* (1980) Ind., 406 N.E.2d 632, 636–37 (cases cited therein). There was no error in giving these instructions.

The defendant next contends that the trial court should have given the following instruction:

"You are instructed that voluntary intoxication is a defense to a criminal act to the extent that it negates specific intent."

The information charged that the defendant "did unlawfully and knowingly have sexual intercourse with * * * by use of force or imminent threat of force, * * *."

"Knowingly" has been equated to intent, and the defense of intoxication has been held applicable, notwithstanding recent redefining of criminal offenses. *Williams v. State* (1980) Ind., 402 N.E.2d 954, 956. In *Williams*, it was further determined that it was error to refuse such an instruction

" * * * where the evidence of intoxication, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent."

■ Although there was evidence that the defendant and others in the group had drunk considerable amounts of alcoholic beverages during the evening and early morning preceding the criminal event, there was no evidence from which the requisite mental state of the defendant could be subjected to a reasonable doubt. The defendant's claim was that he did not penetrate and that her resistance was token only, until penetration was imminent, at which time she protested and he desisted. Not only was there no evidence giving rise to a reasonable doubt upon the matter, the defendant's own testimony made it clear that he was possessed of his mental faculties throughout the episode. This is true, notwithstanding his testimony that " * * * I guess I passed out." which related to his conduct subsequent to his abandonment of the misadventure. The instruction, therefore, was not appropriate under the evidence and was properly refused. *Cf. Fleener v. State* (1980) Ind., 412 N.E.2d 778, 782. (No error to refuse tendered instruction on lesser included offenses where the only issue before the jury was the identity of the perpetrator.)

### ISSUE IV

The defendant contends that the trial court erred in admitting the victim's pants into evidence over objection that no chain of custody had been established.

■ Our rule requiring that the chain of custody be established before exhibits are admitted into evidence applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering or substitution. *Coleman v. State* (1975) 264 Ind. 64, 69, 339 N.E.2d 51, 55.

■ At trial the pants were identified by their owner, the prosecutrix, and by the police officer who received them from her.

From the record it appears that the defendant's objection was premised upon the police officer's failure to mark the pants. The pants had been placed in a sealed and marked evidence bag and then taken to the police laboratory. It is of no consequence that someone in the police laboratory had had access to the garment, inasmuch as the officer recovered it in the same condition as he had left it at the police laboratory.

There is no merit to the defendant's contention. Our decisions do not require a strict showing of the chain of custody, where as here, the exhibit is nonfungible and witnesses identify it. *Lucas v. State* (1980) Ind., 413 N.E.2d 578 (cases cited therein). Additionally, there has been no showing of how the defendant could have been harmed by the introduction of such evidence.

### ISSUE V

■ The defendant urges us to reconsider our holding in *Johnson v. State* (1977) 267 Ind. 256, 259–60, 369 N.E.2d 623, 625, *cert. denied* (1978) 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791, which allows the alternate juror to retire with the regular jurors during deliberations. In the instant case the trial court followed the dictates of *Johnson* by instructing the alternate juror not to communicate with the members of the jury concerning the deliberations. We continue to be unpersuaded that *Johnson* should be overruled. *Wofford v. State* (1979) Ind., 394 N.E.2d 100, 106; *Minton v. State* (1978) 269 Ind. 39, 45, 378 N.E.2d 639, 642; *Phillips v. State* (1978) 268 Ind. 556, 561, 376 N.E.2d 1143, 1146; *Poindexter v. State* (1978) 268 Ind. 167, 175, 374 N.E.2d 509, 513.

■ Defendant has tendered two additional assignments of error by his brief, one relating to the rejection of evidence offered by a defense witness and one related to the denial of his motion for a mis-trial premised upon allegedly improper argument made by the trial prosecutor. Neither of these assignments was presented in the motion to correct errors, hence they are not available

on .appeal. *Guardiola v. State* (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

According to testimony at trial appellant drank considerable amounts of alcohol during the several hours preceding the alleged rape of the prosecutrix and after the alleged rape, passed out. While the jury was not required to credit any of this proof, it was such that it was susceptible of belief, and if believed could have created a reasonable doubt in the mind of the jury that a high probability existed that appellant was aware of what he was doing when he transgressed that line between permissible touching and illegal force. *Williams v. State* (1980) Ind., 402 N.E.2d 954. In my opinion, there was sufficient evidence of intoxication presented to entitle appellant to the instruction on the defense of intoxication, that it was error to refuse that instruction, and that this conviction should be reversed and remanded for a new trial.