No. 48,108

STATE OF KANSAS, *Appellee,* v. JESSE L. THOMAS, *Appellant.*

(551 P. 2d 873)

Opinion filed June 12, 1976.

*James S. Phillips, Jr.,* of Phillips & Phillips, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action by Jesse L. Thomas (defendant-appellant) from a jury verdict which found him guilty of aggravated battery. (K. S. A. 21-3414.) The appellant challenges the sufficiency of the evidence and contends numerous trial errors were committed.

Larry Pennington, the complaining witness, owed the appellant $100. On April 10, 1974, Larry Pennington was half asleep on a couch at Rufus Owens' residence at 2208 East 20th Street in Wichita, Kansas. Larry Pennington testified the appellant entered the Owens' residence and hit him on the side of the head, although he did not see what the appellant hit him with at that time. Mr. Pennington testified he and the appellant got to tussling and the next thing he knew he was looking at the barrel of a twelve gauge

sawed-off shotgun. Larry Pennington then passed out and was taken to the hospital. The hospital staff applied three or four stitches to a cut under his chin, took some x-rays of his head, and gave him pain medication.

Rufus Owens corroborated Mr. Pennington's story. He testified he saw the appellant come in and hit Mr. Pennington with a sawed-off twelve gauge shotgun, first on the top of the head and then on the side. Mr. Owens' wife eventually called the police and the appellant and two codefendants left.

The investigating police officers testified the witnesses told the same story of the appellant clubbing Mr. Pennington in the face with the butt end of a shotgun at the time they investigated the incident.

The appellant testified he and Billy J. Thomas and Nathaniel L. Lane (codefendants) observed Larry Pennington's car at the Owens' residence. The appellant entered and asked Larry Pennington for his money. When Larry started lying, the appellant hit him with his fist on which he was wearing a ring. The appellant testified he had no weapon at any time.

The two codefendants corroborated the appellant's story by testifying they would have seen a gun if it existed but the appellant had no shotgun.

Testimony was also conflicting as to the place of arrest. The appellant, his two codefendants, and two other witnesses testified the police arrested the appellant near Frank English's residence at 1132 North Grove. According to the appellant and his witnesses the police arrested him before he or the codefendants entered the English residence. However, the arresting officer testified the three men were not in the appellant's car, but rather came out of the English residence when the police pulled up to that house. A search of the men and the car, but not the residence, failed to disclose any weapons.

On May 15, 1974, an information was filed. On September 25, 1974, the jury found the appellant guilty of aggravated battery, and appeal has been duly perfected.

Various evidentiary rulings of the trial court are attacked. It is first contended the trial court erred in excluding the testimony of Frazzie Wynn proffered by the appellant's counsel. The appellant's counsel stated Mr. Wynn would testify that an offer was made by the complaining witness, Larry Pennington, for a large sum of money to drop the case at his insistence and not at the re-

quest of anyone else. Counsel for the state objected because the appellant's counsel had prevented him from pursuing this avenue when they examined Mr. Pennington. The state's version was that the appellant was instrumental in making the offer of money. The trial court sustained the state's objection to the appellant's proffer.

The appellant's successful exclusion of similar evidence is significant. It is settled law that one who by his own acts invites error is in no position to complain or take advantage of it on appeal. (*State v. Champ*, 218 Kan. 389, 392, 543 P. 2d 893; *State v. Henderson*, 205 Kan. 231, 238, 468 P. 2d 136; and *State v. Cantrell*, 201 Kan. 182, 187, 440 P. 2d 580, cert. denied, 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315.) Thus, a party who has had evidence excluded is estopped to complain of the subsequent exclusion of similar evidence offered by him. (5 C. J. S., Appeal & Error, § 1506d, p. 904; and 5 Am. Jur. 2d, Appeal and Error, § 718, p. 163.)

Appellant's counsel made no attempt to recall Larry Pennington and let him testify as to his version of the alleged bribery attempt. On this state of facts we cannot say the trial court erred in excluding the appellant's proffer designed to attack the credibility of Larry Pennington as a witness. It is settled law the extent of cross-examination on the issue of credibility of a witness rests in the sound discretion of the trial court, and there must be a showing of abuse of discretion or prejudice to the appealing party before a reversal is justified. (*State v. Watkins*, 219 Kan. 81, 86, 547 P. 2d 810; and *State v. Nix*, 215 Kan. 880, 884, 529 P. 2d 147.)

The appellant contends the trial court erred in permitting the state to impeach the testimony of Frank English by introducing evidence of a prior burglary conviction. Frank English testified the police stopped the appellant and the codefendants when they were getting out of their car and before they entered his residence as the police testified. The state, over objection, introduced evidence of a prior burglary conviction to impeach the witness's credibility. Burglary falls within the category of crimes which involves dishonesty and is admissible for the purpose of impeaching a witness's credibility. (K. S. A. 60-421; *State v. Price*, 215 Kan. 718, 723, 529 P. 2d 85; *Tucker v. Lower*, 200 Kan. 1, 434 P. 2d 320; and see Gard, Kansas Code of Civil Procedure Annotated, § 60-421, p. 393.)

In Ladd, *Credibility Test—Current Trends*, 89 Univ. Pa. L. Rev. 166 (1940) it is said:

". . . On the other hand robbery, larceny, and burglary, while not showing a propensity to falsify, do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness. If the witness had no compunctions against stealing another's property or taking it away from him by physical threat or force, it is hard to see why he would hesitate to obtain an advantage for himself or friend in a trial by giving false testimony. Furthermore, such criminal acts, although evidenced by a single conviction, may represent such a marked breach from sanctioned conduct that it affords a reasonable basis of future prediction upon credibility. . . ." (p 180.)

The appellant contends his due process rights were violated by the prosecutor's misconduct during closing argument. Although no record was taken during the closing argument, the appellant's trial counsel attempted to comply with K. S. A. 1975 Supp. 60-2701, Rule No. 6 (m) and filed an affidavit alleging that the state in closing remarked that the appellant "headed up or was leading a vigilante committee" at the time of the incident.

The state's evidence showed at the time of the assault the appellant told the codefendants to "watch the door." One codefendant was standing at the front door and another went to the kitchen door. When Rufus Owens told his sister to call the police, one codefendant snatched the phone out of her hand. The other codefendant told the witness not to move. If the codefendants were following the appellant's instructions in forcibly collecting a debt, the state's characterization is not unjustified. The court instructed the jury that the verdict must be founded entirely upon the evidence admitted; that the statements, arguments and remarks of counsel were intended to help understand the evidence and apply the law, but were not evidence; and that the jury should disregard any utterance of counsel that had no basis in the evidence. Thus, no prejudice to any substantial rights of the appellant is demonstrated. (*State v. Watkins,* supra; *State v. Murrell,* 215 Kan. 10, 13, 523 P. 2d 348; and *State v. Neil,* 203 Kan. 473, 476, 454 P. 2d 136.)

The appellant next contends the trial court erred in overruling his motion for judgment of acquittal under K. S. A. 22-3419. This statute is construed and the tests to be applied by the trial court in passing upon a motion for judgment of acquittal are set out in *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290, where the court held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly

possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. 3.)

(See also, State v. Holloway, 219 Kan. 245, 255, 547 P. 2d 741; State v. McCorgary, 218 Kan. 358, 367, 543 P. 2d 952; and State v. Rasler, 216 Kan. 582, 583-584, 533 P. 2d 1262.)

Here the appellant admitted he beat Pennington. Rufus Owens and Pennington testified the appellant used a sawed-off shotgun in the beating. It is uncontroverted that Pennington sustained serious injuries requiring emergency medical treatment. The jury was properly instructed on aggravated battery and the lesser offense of battery. They found the appellant guilty of aggravated battery.

The appellant contends the evidence was insufficient to support the jury verdict. The fact Pennington may have owed the appellant money is not a defense to aggravated battery under the circumstances involved. (See, State v. Pierce, et al., 208 Kan. 19, 26, 490 P. 2d 584; and State v. Russell, 217 Kan. 481, 536 P. 2d 1392.) Likewise the fact no shotgun was found is not crucial as the appellant contends. The jury could have believed a weapon was used but never located. (State v. Carney, 216 Kan. 704, 533 P. 2d 1268; State v. Johnson, 210 Kan. 288, 502 P. 2d 802; State v. Sagebiel, 206 Kan. 482, 480 P. 2d 44; and State v. Potts, 205 Kan. 42, 468 P. 2d 74.) In the alternative the jury could have found the appellant guilty of the crime of aggravated battery even if they did not believe a weapon was used. (K. S. A. 21-3414.)

The jury found sufficient intent to convict the appellant of aggravated battery. In State v. Gatewood, 169 Kan. 679, 221 P. 2d 392, intent was defined as:

". . . [A] state of mind existing at the time an offense is committed and [it] may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof." (Syl. 3.)

One is presumed to intend the natural and probable consequences of his voluntary acts. (State v. Donahue, 197 Kan. 317, 416 P. 2d 287.)

Under all the facts and circumstances a jury could reasonably have drawn an inference of guilt of aggravated battery. In State v. Kelly, 210 Kan. 192, 499 P. 2d 1040, the court held:

"Before a verdict of guilty, which has been approved by the district court, may be set aside because of insufficient evidence, it must clearly be shown that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the district court." (Syl. 3.)

(See also, *State v. Kane,* 218 Kan. 13, 542 P. 2d 335; and *State v. Torline,* 215 Kan. 539, 527 P. 2d 994.)

Under the facts and circumstances involved, there is sufficient evidence to support the conviction. Accordingly, the judgment of the lower court is affirmed.